In the United States District Court
for the Southern District of Ohio
Columbus Division

| | |
|---|---|
| Monique Hannon | |
| *On behalf of herself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| | Magistrate |
| v. | |
| ADT Pizza LLC; ADT Management LLC; Adam Diamond; David Tetens; John Doe 1–10; Doe Corporation 1–10 | Jury Demand Endorsed Hereon |
| Defendants. | |

## Class and Collective Action Complaint

### Introduction

1. Monique Hannon on behalf of herself and all similarly situated individuals, brings this action against Defendants ADT Pizza LLC; ADT Management LLC; Adam Diamond; David Tetens; John Doe 1–10; and Doe Corporation 1–10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60 and unjust enrichment.

2. Defendants operate Pizza Hut franchises in Ohio (the "Defendants' Pizza Hut

1

stores").

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, the Ohio Constitution, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

4.      Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, Section 34a, and the Prompt Pay Act.

5.      All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for expenses.

6.      Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers in Ohio, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Section 34a, the Prompt Pay Act, O.R.C. § 2307.60, and unjust enrichment.

## Jurisdiction and Venue

7.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

9.      Plaintiff is a resident of Ohio.

2

10. Plaintiff is an "employee" of all of the Defendants as defined in the FLSA, Section 34a, and the Ohio Prompt Pay Act.

11. Plaintiff has given written consent to join this action.

**Defendants**

**ADT Pizza LLC**

12. Defendant ADT Pizza LLC is a limited liability company incorporated in the state of Delaware with its principal place of business in Connecticut.

13. ADT Pizza LLC was incorporated in Delaware.

14. ADT Pizza LLC is headquartered at 50 Charles Street, Westport, CT 06880.

15. ADT Pizza LLC maintains its principal place of business in Westport, CT.

16. ADT Management LLC is a principal of ADT Pizza LLC.

17. ADT Pizza LLC owns and operates Pizza Hut franchise stores in Ohio.

18. ADT Pizza LLC is owned by Adam Diamond.

19. ADT Pizza, LLC is owned by David Tetens.

20. ADT Pizza LLC is operated by Adam Diamond.

21. ADT Pizza, LLC is operated by David Tetens.

22. ADT Pizza LLC is the entity name on Plaintiff's paystubs.

23. ADT Pizza LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24. ADT Pizza LLC applies, or causes to be applied, substantially the same employment policies, practices, and procedures to all delivery drivers at its location, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

3

25.     ADT Pizza LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

26.     At all relevant times, ADT Pizza LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

27.     ADT Pizza LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

28.     At all relevant times, ADT Pizza LLC has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

29.     ADT Pizza LLC's gross revenue exceeds $500,000 per year.

**ADT Management LLC**

30.     Defendant ADT Management LLC is a limited liability company incorporated in the state of Delaware.

31.     ADT Management LLC is a principal of ADT Pizza LLC.

32.     ADT Management LLC owns and operates over 30 Pizza Hut franchise stores in Ohio.

33.     ADT Management LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

34.     ADT Management LLC applies, or causes to be applied, substantially the same employment policies, practices, and procedures to all delivery drivers at its location, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

4

35.    ADT Management LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

36.    At all relevant times, ADT Management LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

37.    ADT Management LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

38.    At all relevant times, ADT Management LLC has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

39.    ADT Management LLC's gross revenue exceeds $500,000 per year.

**Adam Diamond**

40.    Defendant Adam Diamond is the CEO and CFO of Defendants' Pizza Hut stores.

41.    Adam Diamond resides in Connecticut.

42.    Adam Diamond is a Pizza Hut franchisee.

43.    Upon information and belief, Adam Diamond has entered into a franchise agreement with Pizza Hut relating to Defendants' Pizza Hut stores.

44.    Adam Diamond is an operator of Defendants' Pizza Hut stores.

45.    Adam Diamond is individually liable to the delivery drivers at Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA because he owns and operates Defendants' Pizza Hut stores, serves as the CEO and CFO of the Defendants' Pizza Hut stores, ultimately controls significant aspects of Defendants' Pizza Hut stores day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

46. At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had financial control over the operations at the Defendants' Pizza Hut stores.

47. At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had a role in significant aspects of the Defendants' Pizza Hut stores day to day operations.

48. At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had control over the Defendants' Pizza Hut stores pay policies.

49. At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence over delivery driver pay.

50. At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

51. At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

52. At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to transfer the assets and liabilities of the Defendants Pizza Hut stores.

53. At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to declare bankruptcy on behalf of the Defendants'

6

Pizza Hut stores.

54.    At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to enter into contracts on behalf of the Defendants' Pizza Hut stores.

55.    At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has had the power to close, shut down, and/or sell the Defendants' Pizza Hut stores.

56.    At all relevant times, by virtue of his role as CEO and CFO of the Defendants' Pizza Hut stores, Adam Diamond has authority over the overall direction of Defendants' Pizza Hut stores and is responsible for its operations.

57.    The Defendants' Pizza Hut stores functions for Adam Diamond's profit.

58.    Adam Diamond has influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**David Tetens**

59.    Defendant David Tetens is the COO of Defendants' Pizza Hut stores.

60.    David Tetens is a Pizza Hut franchisee.

61.    Upon information and belief, David Tetens has entered into a franchise agreement with Pizza Hut relating to Defendants' Pizza Hut stores.

62.    David Tetens is an operator of Defendants' Pizza Hut stores.

63.    David Tetens is individually liable to the delivery drivers at Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA because he owns and operates Defendants' Pizza Hut stores, serves as the COO of the Defendants' Pizza Hut stores, ultimately

7

controls significant aspects of Defendants' Pizza Hut stores day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

64.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had financial control over the operations at the Defendants' Pizza Hut stores.

65.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had a role in significant aspects of the Defendants' Pizza Hut stores day to day operations.

66.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had control over the Defendants' Pizza Hut stores pay policies.

67.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence over delivery driver pay.

68.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

69.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

70.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to transfer the assets and liabilities of the Defendants' Pizza Hut stores.

71.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores,

8

David Tetens has had the power to declare bankruptcy on behalf of the Defendants' Pizza Hut stores.

72.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to enter into contracts on behalf of the Defendants' Pizza Hut stores.

73.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has had the power to close, shut down, and/or sell the Defendants' Pizza Hut stores.

74.     At all relevant times, by virtue of his role as COO of the Defendants' Pizza Hut stores, David Tetens has authority over the overall direction of Defendants' Pizza Hut stores and is responsible for its operations.

75.     The Defendants' Pizza Hut stores functions for David Tetens' profit.

76.     David Tetens has influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**Doe Corporation 1–10**

77.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Pizza Hut stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Ohio wage law.

78.     Upon information and belief, Adam Diamond and/or David Tetens own and operate, in whole or in part, a number of other entities that make up part of the Defendants' Pizza Hut stores.

79.     Upon information and belief, the franchisor, Pizza Hut, may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

80.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

9

**John Doe 1–10**

81.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Ohio wage law.

82.     Upon information and belief, Adam Diamond and/or David Tetens have entered into co-owner relationships with a number of their managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

83.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

84.     During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

85.     The primary function of the Defendants' Pizza Hut stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

86.     Defendants' Pizza Hut stores employs delivery drivers.

87.     Plaintiff and the similarly situated persons that Plaintiff seek to represent are current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores.

88.     All delivery drivers employed at the Defendants' Pizza Hut stores over the last three years have had essentially the same job duties—to deliver pizza and other food items to customers.

89.     Drivers at the Defendants' Pizza Hut stores work "dual jobs".

10

90.	Delivery drivers' inside job duties were not completed simultaneously with their tipped job duties.

91.	Delivery drivers' inside job duties were not related to the tipped job duties.

92.	At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they work while completing deliveries.

93.	Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

94.	Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cellphone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

95.	Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cellphone and data charges all for the primary benefit of Defendants.

96.	Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cellphones to use while completing deliveries for Defendants.

97.	Defendants require delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

98.	The Defendants' Pizza Hut stores do not reimburse the delivery drivers' cellphone expenses.

11

99.    The Defendants' Pizza Hut stores do not track or record the delivery drivers' cellphone expenses.

100.    Defendants reimburse delivery drivers' automobile expenses based on a per-mile or per-delivery reimbursement rate that consistently results in the delivery drivers receiving less than the IRS standard business mileage rate for each mile driven.

101.    Defendants' Pizza Hut stores do not track or record the delivery drivers' actual automobile expenses.

102.    Defendants' Pizza Hut stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

103.    Defendants do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers work for Defendants.

104.    Defendants do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers work for Defendants.

105.    Defendants do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

106.    Defendants do not collect receipts of delivery drivers' automobile registration costs.

107.    Defendants do not collect receipts of delivery drivers' automobile financing or purchase costs.

108.    Defendants do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Pizza Hut stores.

109.    Defendants did not keep track of the hours the delivery drivers spent maintaining their car, putting gas in their car, taking their car to be repaired, and completing other tasks necessary for their car to be a functional business tool, despite knowing about this time and benefiting from it.

110.    Defendants' Pizza Hut stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

111.    Defendants' Pizza Hut stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

112.    Defendants' Pizza Hut stores do not reimburse their delivery drivers' automobile expenses at the IRS standard business mileage rate.

113.    Defendants' Pizza Hut stores do not reasonably approximate the delivery drivers' automobile expenses.

114.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

      a.     2020: 57.5 cents/mile
      b.     2021: 56 cents/mile
      c.     2022: 58.5 cents/mile
      d.     2022: 62.5 cents/mile
      e.     2023: 65.5 cents/mile

115.    The delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cellphone and data charges.

116.    The delivery drivers at Defendants' Defendants' Pizza Hut stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

117.     Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

118.     Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

119.     Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

120.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law.

121.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

122.     All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

123.     Regardless of the precise amount of the reimbursements paid at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

124.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed

automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

125.   To the extent Defendants did reimburse Plaintiff and similarly situated delivery drivers any amount for the vehicle and other expenses they incur, such payments cannot be considered part of the wages paid to them for purposes of the compliance with the FLSA's minimum wage rules. 29 U.S.C. 207(h).

126.   Defendants have willfully failed to pay state and federal minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Pizza Hut stores.

127.   Defendants' policy of requiring delivery drivers to provide the cars used to carry out Defendants' business unjustly enriches them at the expense of their delivery drivers.

**128.**   The delivery drivers at the Defendants' Pizza Hut stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

**129.**   Defendants reimburse their delivery drivers amounts less than they would have had to be pay if they had rented vehicles each day to use to make deliveries.

**130.**   Defendants reimburse their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

**131.**   Defendants benefit because they do not have to employ additional individuals or expend additional time managing, monitoring, and maintaining a fleet of vehicles.

**132.**   Defendants benefit from the delivery drivers at the Defendants' Pizza Hut stores spending time off the clock repairing and maintaining their vehicles.

**133.**   Defendants reimburse their delivery drivers amounts less than they would have had to pay to store a fleet of vehicles to complete their deliveries.

**134.**   Defendants benefit from delivery drivers at the Defendants' Pizza Hut stores taking on the risk of using their vehicles to drive for Defendants' business.

**135.** Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

**136.** Defendants benefit from not having to store the delivery drivers' vehicles when they are not in use for business purposes.

**137.** Defendants are more easily able to secure loans or financing because the delivery drivers take on the substantial costs associated with providing cars needed to operate their business.

**138.** Defendants need less up-front capital because the delivery drivers provide cars to make Defendants' deliveries.

139. All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

140. All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

## Plaintiff's Individual Factual Allegations

141. Plaintiff had worked for Defendants as a pizza delivery driver at the Defendants' Pizza Hut stores from December 2020 through March 2021.

142. Plaintiff worked dual jobs—one inside the store, and one outside the store.

143. Plaintiff's inside job duties were not completed at the same time as her on-the-road job duties.

144. Plaintiff's inside job duties were not related to her tipped job duties.

145. Plaintiff delivered pizza and other food items to Defendants' customers' homes and businesses.

146. When she was not making deliveries, Plaintiff worked inside the restaurant, completing tasks such as taking orders, doing dishes, sweeping, cashing customers out, and/or

doing other tasks necessary for the operation of the restaurant.

147.     Plaintiff was required to use her own car to deliver pizzas.

148.     Plaintiff was required to use her own cellphone when delivering pizzas.

149.     Plaintiff was paid at or close to minimum wage for all hours worked on the road making deliveries.

150.     Upon information and belief, Plaintiff was reimbursed either nothing at all or $.13 per mile during her employment with Defendants.

151.     Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

152.     Plaintiff was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

153.     Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellphone service, GPS service, automobile financing, storage costs, and other equipment necessary for delivery drivers to complete their job duties.

154.     Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incurred cellphone and data charges all for the primary benefit of Defendants.

155.     Defendants did not track the actual expenses incurred by Plaintiff.

156.     Defendants did not ask Plaintiff to provide receipts of the expenses she incurred while delivering pizzas and other food items for Defendants.

157.     Defendants' Pizza Hut stores did not collect receipts from Plaintiff related to the expenses she incurred while completing deliveries.

158.     Defendants did not collect receipts of Plaintiff's gasoline purchases during weeks when she worked for Defendants.

159.     Defendants did not collect receipts of Plaintiff's automobile maintenance, repair, and parts purchased or paid for during weeks when she worked for Defendants.

160.     Defendants did not collect receipts of Plaintiff's monthly or annual automobile insurance costs.

161.     Defendants did not collect receipts of Plaintiff's automobile registration costs.

162.     Defendants did not collect receipts of Plaintiff's automobile financing or purchase costs.

163.     Defendants did not collect any other receipts from Plaintiff related to the automobile expenses she incurred as a delivery driver at Defendants' Pizza Hut stores.

164.     Defendants did not track the cellphone expenses incurred by Plaintiff.

165.     Defendants did not ask Plaintiff to provide records of cellphone expenses she incurred while delivering pizzas for Defendants.

166.     Defendants did not collect receipts of Plaintiff's cellphone data plan expenses.

167.     Defendants did not reimburse Plaintiff for her cellphone expenses.

168.     Defendants did not reimburse Plaintiff based on her actual delivery-related expenses.

169.     Plaintiff was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

170.     During all relevant times, Defendants have failed to reimburse Plaintiff for all or some

of her automobile and other job-related expenses.

171.     Defendants did not pay Plaintiff for hours she spent maintaining her car, taking her car to the repair shop, putting gas in her car, etc., that served Defendants' benefit.

172.     Plaintiff regularly made approximately 3 deliveries per hour during the hours she worked as a delivery driver.

173.     Plaintiff regularly drove approximately 5 miles round trip per delivery.

174.     In 2021, for example, the IRS business mileage reimbursement was \$.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. As such, if she was reimbursed \$.13 per mile, she was under-reimbursed by \$.43 per mile. If she was not reimbursed at all, she was under-reimbursed by \$.56 per mile. Considering Plaintiff estimates an average of about 5 miles per delivery, Defendants under-reimbursed her by between \$2.15 (\$.43 × 5 miles) and \$2.80 (\$.56 × 5 miles) per delivery, and between \$6.45 (\$2.15 × 3 deliveries per hour) and \$8.40 (\$2.80 × 3 deliveries per hour) per hour worked on the road making deliveries.

175.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

176.     Defendants have been unjustly enriched by Plaintiff in that she used her own vehicle and incurred vehicle-related expenses for Defendants' benefit.

177.     Defendants have been unjustly enriched by Plaintiff in that she used her own cellphone and incurred cellphone-related expenses for Defendants' benefit.

## Class Action Allegations

178.     Plaintiff brings the Second, Third and Fourth Counts under Federal Rule of Civil

19

Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza Hut stores in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Ohio Wage Class").

179. Plaintiff brings the Fifth Count under Federal Rule of Civil procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza Hut stores in the State of Ohio between the date six years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Ohio Unjust Enrichment Class").

180. Excluded from the Rule 23 Ohio Wage Class and Rule 23 Ohio Unjust Enrichment Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Ohio Wage Class and/or Rule 23 Ohio Unjust Enrichment Class.

181. The number and identity of the Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class members are ascertainable from Defendants' records.

182. The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Ohio Wage Class member are determinable from Defendants' records.

183. The benefits conferred by the Rule 23 Ohio Unjust Enrichment Class members and realized by Defendants are determinable from Defendants' records.

184. For the purpose of notice and other purposes related to this action, the Rule 23 Ohio

Wage Class members and Rule 23 Ohio Unjust Enrichment Class members' names and contact information are readily available from Defendants.

185.     Notice can be provided by means permissible under Rule 23 for the Rule 23 Ohio Wage Class members and the Rule 23 Ohio Unjust Enrichment Class members.

186.     The Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class members are so numerous that joinder of all members is impracticable.

187.     The disposition of the Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class members' claims as a class will benefit the parties and the Court.

188.     There are more than 50 Rule 23 Ohio Wage Class members.

189.     There are more than 50 Rule 23 Ohio Unjust Enrichment Class members.

190.     Plaintiff's claims are typical of those claims which could be alleged by any class member in either the Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by each Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class member in separate actions.

191.     Plaintiff and the Rule 23 Ohio Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a and O.R.C. § 4113.15.

192.     Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members have also unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

193.     Plaintiff and the Rule 23 Ohio Wage Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

194.     Plaintiff and the Rule 23 Ohio Unjust Enrichment Class sustained similar losses,

injuries, and damages arising from the same unlawful practices, polices, and procedures.

195.     By seeking to represent the interests of the Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class members, Plaintiff is exercising and intends to exercise her right to engage in concerted activity for the mutual aid or benefit of herself and her co-workers.

196.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Ohio Wage Class and Rule 23 Ohio Unjust Enrichment Class and has no interests antagonistic to the Rule 23 Ohio Wage Class.

197.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

198.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

199.     Upon information and belief, Defendants and other employers throughout the state violate Section 34a and O.R.C. § 4113.15.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

200. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

201. The Rule 23 Ohio Wage Class and the Rule 23 Ohio Unjust Enrichment Class are properly treated as subclasses pursuant to Rule 23(c)(5).

202. Common questions of law and fact exist as to the Rule 23 Ohio Wage Class that predominate over any questions only affecting Plaintiff and the Rule 23 Ohio Wage Class members individually and include, but are not limited to:

a. Whether Plaintiff and the Rule 23 Ohio Wage Class members were subject to a common expense reimbursement policy;

b. Whether Plaintiff and the Rule 23 Ohio Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c. Whether Plaintiff and the Rule 23 Ohio Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d. Whether Defendants collected and maintained records of Plaintiff and the Rule 23 Ohio Wage Class members' actual vehicle expenses;

e. Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Wage Class members for their actual expenses;

f. Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

g. Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Wage Class members based on a reasonable approximation of the expenses they incurred;

h. Whether Defendants properly reimbursed Plaintiff and the Rule 23 Ohio Wage Class members;

i. Whether Defendants failed to pay Plaintiff and the Rule 23 Ohio Wage Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute";

j. The nature and extent of class-wide injury and the measure of damages for

those injuries;

    a. Whether Plaintiff and the Rule 23 Ohio Wage Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants; and

    b. Whether Plaintiff and the Rule 23 Ohio Wage Class members were subject to a common cellphone expense reimbursement policy.

203. Common questions of law and fact exist as to the Rule 23 Ohio Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members individually and include, but are not limited to:

    a. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

    b. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

    c. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

    d. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members were subject to a common cellphone expense reimbursement policy;

    e. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    f. Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Rule 23 Ohio Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

    g. How much it would have cost Defendants to operate their business but for Plaintiff and the Rule 23 Ohio Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

    h. Whether Defendants avoided storage costs, insurance, purchase costs, financing charges, risk of loss of property, employment costs relating to the overseeing and maintaining of a fleet of cars, and other costs as a result of Plaintiff and the Rule 23

Ohio Unjust Enrichment Class providing cars to use to carry out Defendants' business;

i.  Whether Defendants benefited from Plaintiff and the Rule 23 Ohio Unjust Enrichment Class providing vehicles and thereby covering substantial business expenses for Defendants;

j.  Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

k.  Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Ohio Unjust Enrichment Class;

l.  Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Rule 23 Ohio Unjust Enrichment Class without compensating for it;

m. The nature and extent of class-wide injury and the measure of damages for those injuries.

204.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Ohio Wage Class and the Rule 23 Ohio Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum and Overtime Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

205.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

206.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

207.    Defendants pay Plaintiff and the FLSA Collective at or close to minimum wage for the

job they work on the road making deliveries.

208. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

209. After accounting for the unreimbursed expenses of Plaintiff and the FLSA Collective, Defendants paid Plaintiff and the FLSA Collective less than minimum wage.

210. To the extent Plaintiff and the FLSA Collective worked over 40 hours per week in any workweek, Defendants' policy of under-reimbursing for vehicle and other expenses resulted in Plaintiff and the FLSA Collective receiving less than time and a half their regular hourly rate for overtime hours.

211. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

212. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

213. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid minimum and overtime wages, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Class)**

214. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

215. Defendants paid Plaintiff and the Rule 23 Ohio Wage Class below minimum wage for

the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

216.     Defendants ostensibly paid Plaintiff and the Rule 23 Ohio Wage Class at or close to minimum wage for the hours they worked.

217.     Because Defendants required Plaintiff and the Rule 23 Ohio Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Ohio Wage Class minimum wage.

218.     By not paying Plaintiff and the Rule 23 Ohio Wage Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

219.     As a result of Defendants' violations, Plaintiff and the Rule 23 Ohio Wage Class are entitled to damages, including, but not limited to, unpaid wages, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

## Count 3
### Untimely Payment of Wages – O.R.C. § 4113.15
### (On Behalf of Plaintiff and the Rule 23 Ohio Wage Class)

220.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

221.     During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Ohio Wage Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

222.     O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Ohio Wage Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth

day of each month, for wages earned during the last half of the preceding calendar month.

223.     By failing to pay Plaintiff and the Rule 23 Ohio Wage Class all wages due to them

under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

224.     Plaintiff and the Rule 23 Ohio Wage Class's unpaid wages and unreimbursed

expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled

payday.

225.     In violating Ohio law, Defendants acted willfully, without a good faith basis, and with

reckless disregard to Ohio law.

226.     As a result of Defendants' willful violation, Plaintiff and the Rule 23 Ohio Wage Class

are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 4**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Class)**

227.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten

herein.

228.     The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for

willful violations of the FLSA.

229.     By their acts and omissions described herein, Defendants have willfully violated the

FLSA, and Plaintiff and the Rule 23 Ohio Wage Class have been injured as a result.

230.     O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to

recover damages in a civil action, including exemplary and punitive damages.

231.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23

Ohio Wage Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and Rule 23 Ohio Unjust Enrichment Class)**

232.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

233.     The Rule 23 Ohio Unjust Enrichment Class members at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cars and cellphones to perform work for Defendants.

234.     Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Ohio Unjust Enrichment Class members.

235.     It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Ohio Unjust Enrichment Class members without commensurate compensation.

236.     Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the 6 years preceding the filing of this complaint.

**WHEREFORE,** Plaintiff Monique Hannon prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and her counsel to represent the collective action members.

B.     Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure.

D.      Designation of Plaintiff as representative of the Rule 23 Ohio Wage Class and Rule 23 Ohio Unjust Enrichment Class, and counsel of record as Class Counsel for the Class.

E.      A declaratory judgment that the practices complained of herein are unlawful under Section 34a and O.R.C. § 4113.15.

F.      An award of unpaid minimum wages and unreimbursed expenses due under Section 34a.

G.      An award of damages under Section 34a, based on Defendants' failure to pay minimum wages, calculated as an additional two times of back wages.

H.      Liquidated damages under O.R.C. § 4113.15.

I.      Liquidated damages under the FLSA.

J.      Compensatory and punitive damages under O.R.C. § 2307.60.

K.      An award of restitution as a result of unjust enrichment to the Rule 23 Ohio Unjust Enrichment Class.

L.      An award of prejudgment and post-judgment interest.

M.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

N.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Andrew Kimble
Andrew P. Kimble (Ohio Bar No. 0093172)
Andrew R. Biller (Ohio Bar No. 0081452)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515

Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Andrew Kimble*
Andrew Kimble

24